ATTORNEYS FOR APPELLANT
Suzy D. St. John
Ruth A. Johnson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana



FILED
Dec 18 2014, 10:43 am

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 49S02-1405-CR-00325

RODREGUS MORGAN,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Marion Superior Court, No. 49F18-1208-FD-060696
The Honorable Reuben B. Hill, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-1304-CR-00386

**December 18, 2014**

**David, Justice.**

Rodregus Morgan was convicted under Indiana's public intoxication statute for being intoxicated in a public place and engaging in annoying conduct. Morgan challenges his conviction on two possible grounds. First, that the Indiana public intoxication statute is unconstitutionally vague. Second, that there was insufficient evidence for his conviction.

**Facts and Procedural History**

On August 31, 2012, Brycen Garner, a patrol officer with the Indianapolis Metropolitan Police Department, was working part-time for the Indygo Bus Service. Officer Garner was responsible for ensuring the health, safety, and welfare of Indygo customers and operators. It was approximately 9:25 a.m. when Officer Garner overheard a man yelling at another man to wake up inside one of the bus shelters. After listening to the yelling for a couple of minutes and seeing the man inside the shelter continue to wake up and doze back off, Officer Garner exited his patrol vehicle, and in full uniform, walked over to the bus shelter to check on the welfare of the man inside. The man asleep inside the bus shelter was later identified as Rodregus Morgan.

When Officer Garner walked into the shelter, the other man present explained that he was trying to wake his brother. Officer Garner tapped on Morgan's shoulder and tried to wake him. Morgan raised his head and stated, "Get off of me." (Tr. at 13.) Officer Garner again tapped Morgan and told him he needed to leave the bus shelter, and repeated this to Morgan again when he did not respond.[1] Morgan seemed agitated to Officer Garner but he did comply and get up from the bench. When Morgan stood, Officer Garner noticed him swaying from side-to-side. Morgan's eyes were bloodshot red and glassy, and Officer Garner smelled alcohol. At that time, Officer Garner placed Morgan under arrest for public intoxication because he believed him to be under the influence of alcohol and an annoyance. After Morgan was placed under arrest, Morgan began yelling and making a great deal of noise. Officer Garner directed him to stop making an unreasonable amount of noise but Morgan continued yelling. Due to this behavior, Officer Garner added disorderly conduct and intimidation to Morgan's arrest form.

Morgan was charged with Count I Class D felony intimidation,[2] Count II Class B misdemeanor public intoxication,[3] and Count III Class B misdemeanor disorderly conduct.[4]

---

[1] However, in Officer Garner's probable cause affidavit, he indicated that he only attempted to wake Morgan and request that he leave the shelter one time before placing Morgan under arrest for public intoxication.

[2] Ind. Code § 35-45-2-1 (effective 2012).

Morgan waived his right to a jury trial. At trial, Morgan explained that he suffers from sleep apnea, which causes him to fall asleep frequently during the day and in odd places. [5] While Morgan admitted to consuming alcohol the night before, he claimed that on the morning of August 31st he did not feel drunk nor did he remember being asked to leave the bus shelter by Officer Garner.

The trial court dismissed Count I, intimidation, and found Morgan guilty of Count II, public intoxication, and Count III, disorderly conduct. Morgan received a concurrent sentence for both counts of one hundred and eighty days suspended to probation, except for sixteen days that Morgan would receive credit for time already served.

Morgan appealed his conviction, arguing that the term "annoys" in Indiana's public intoxication statute is unconstitutionally vague, that there was insufficient evidence to sustain his conviction for public intoxication, and that there was insufficient evidence to sustain his conviction for disorderly conduct. The Court of Appeals held that the term "annoys" within Indiana Code § 7.1-5-1-3(a)(4) is unconstitutionally vague and struck that term from the statute. Morgan v. State, 4 N.E.2d 751, 758 (Ind. Ct. App. 2014). The Court of Appeals also held that there was sufficient evidence to uphold Morgan's disorderly conduct conviction.[6] Id. at 760. This Court granted the State's petition to transfer and thereby vacated the Court of Appeals opinion. See Ind. Appellate Rule 58(A).

## Standard of Review

*A. Constitutionality of a Statute*

---

[3] Ind. Code § 7.1-5-1-3 (effective 2012).
[4] Ind. Code § 35-45-1-3 (effective 2012).
[5] This diagnosis was substantiated with relevant medical records.
[6] We summarily affirm the Court of Appeals on this issue. See Ind. Appellate Rule 58(A)(2).

A constitutional challenge to a statute is reviewed de novo. Lock v. State, 971 N.E.2d 71, 74 (Ind. 2012). However, "[a] challenge to the validity of a statute must overcome a presumption that the statute is constitutional." Brown v. State, 868 N.E.2d 464, 467 (Ind. 2007) (citing State v. Lombardo, 738 N.E.2d 653, 655 (Ind. 2000)). It is the burden of the party challenging the statute to prove otherwise. Brown, 868 N.E.2d at 467 (citing Brady v. State, 575 N.E.2d 981, 984 (Ind. 1991)).

*B. Sufficiency of the Evidence*

"In reviewing sufficiency of the evidence, we examine only the probative evidence and reasonable inferences that support the verdict." Lock, 971 N.E.2d at 74 (citing Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007)) (internal quotations omitted). The Court will not assess witness credibility nor reweigh evidence. Id. Rather, "we consider only the evidence most favorable to the trial court ruling and affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." Lock, 971 N.E.2d at 74 (quoting Jenkins v. State, 726 N.E.2d 268, 270 (Ind. 2000)) (internal quotations omitted).

**I.    Constitutionality of Indiana's Public Intoxication Statute**

Morgan has specifically challenged Indiana's public intoxication statute as unconstitutionally vague. A criminal statute can be found unconstitutionally vague: "(1) for failing to provide notice enabling ordinary people to understand the conduct that it prohibits" or "(2) for the possibility that it authorizes or encourages arbitrary or discriminatory enforcement." Brown, 868 N.E.2d at 467 (citing City of Chicago v. Morales, 527 U.S. 41, 56 (1999)). However, "[i]f a statute has two reasonable interpretations, one constitutional and the other not, we will choose the interpretation that will uphold the constitutionality of the statute." Sims v. United States Fidelity & Guar. Co., 782 N.E.2d 345, 349 (Ind. 2003) (citing Boehm v. Town of St. John, 675 N.E.2d 318, 321 (Ind. 1996)).

It is also necessary for "a penal statute [to] give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden so that 'no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.'" Brown, 868 N.E.2d at 467 (citing Healthscript, Inc. v. State, 770 N.E.2d 810, 816 (Ind. 2002)). Yet,

"[t]his court should 'nullify a statute on constitutional grounds only where such result is *clearly rational and necessary.*'" Sims, 782 N.E.2d at 349 (quoting Bd. of Comm'rs of the Cnty. of Howard v. Kokomo City Plan Comm'n, 263 Ind. 282, 286, 330 N.E.2d 92, 95 (1975)) (emphasis added). Furthermore, "[v]agueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis." Maynard, Warden, et. al. v. Cartwright, 486 U.S. 356, 361 (1988) (citing United States v. Powell, 423 U.S. 87, 92-93 (1975)).

Here, the relevant portion of Indiana's public intoxication statute provides:

> [I]t is a Class B misdemeanor for a person to be in a public place or a place of public resort in a state of intoxication caused by the person's use of alcohol or a controlled substance . . . if the person:
>
> \*     \*     \*     \*
>
> (4) harasses, annoys, or alarms another person.

Ind. Code § 7.1-5-1-3(a)(4) (Supp. 2014) (effective 2012).[7]

Morgan has specifically challenged the term "annoys" as unconstitutionally vague. Morgan argues that annoys is not defined in the statute, and that term alone fails to provide the necessary warning or notice of the prohibited conduct that is required in a criminal statute. Furthermore, Morgan asserts that reasonable people disagree as to what behavior is annoying, which demonstrates that there is no objective way to apply this section of the statute.

We would have to agree with Morgan that "annoys," standing alone, does appear to create a vagueness problem. However, principles of statutory construction and precedent dictate how this Court is to analyze statutory terms. When our precedent and principles of statutory interpretation are applied, we cannot agree with Morgan's conclusion that the term "annoys" is unconstitutionally vague.

---

[7] Indiana's public intoxication statute was amended in 2012. Prior to the amendment, § 7.1-5-1-3 provided that "It is a class B misdemeanor for a person to be in a public place or a place of public resort in a state of intoxication caused by the person's use of alcohol or a controlled substance . . . ." Ind. Code § 7.1-5-1-3 (2010). Thus, being intoxicated in public, without more, was all that was required to violate the statute.

The United States Supreme Court provides guidance on how to address constitutional challenges to statutes. In Roth v. U.S., the Court addressed the constitutionality of the federal obscenity statute. 354 U.S. 476, 480, 490-92 (1957). The statute punished mailing material that was "obscene, lewd, lascivious, or filthy." Id. at 491. It was argued that these words "do not mean the same thing to all people . . . ." Id. While recognizing that the words lacked precision, the Court emphasized that precision is not constitutionally required. The Court explained that an earlier test "allowed material to be judged merely by the effect of an isolated excerpt upon particularly susceptible persons." Id. at 488-89 (citing Regina v. Hicklin, L.R. 3 Q.B. 360 (1868)). However, the court abandoned this subjective test for a test that determined "whether to the *average person,* applying contemporary community standards," material was obscene. Roth, 354 U.S. at 489 (emphasis added). While the subjective test risked unconstitutionally restricting freedom of speech and press, "the substituted standard provides safeguards adequate to withstand the charge of constitutional infirmity." Id. This is true even though "there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls," but that is not a "sufficient reason to hold the language too ambiguous to define a criminal offense." Id. at 491-92 (citing U.S. v. Petrillo, 332 U.S. 1, 7-8 (1947); and U.S. v. Harriss, 347 U.S. 612, 624, n. 15 (1954)). A reasonableness standard provided enough precision for the statute to survive the constitutional challenge.

Analogous principles were expressed in Maynard, 486 U.S. 356. The United States Supreme Court continued to consider statutes from the perspective of a reasonable person by recognizing that a vagueness challenge based upon Due Process "may be overcome in any specific case where reasonable persons would know that their conduct is at risk." Id. at 361.

Similarly to the United States Supreme Court, Indiana courts have also adopted the principle that criminal statutes do not require absolute precision in order to pass constitutional muster. Rather, a statute "need only inform the individual of the generally proscribed conduct, [and] need not list with itemized exactitude each item of conduct prohibited." State v. Lombardo, 738 N.E.2d 653, 656 (Ind. 2000) (citing State v. Downey, 467 N.E.2d 121, 122 (Ind. 1985)). Even if more precise language could be used, a statute is not necessarily void for vagueness. Lock, 971 N.E.2d at 75.

6

In addition to this principle, this Court acknowledged in 1885 that statutes should first be given their literal meaning, "[b]ut if, by giving them such a signification, the meaning of the whole statute is rendered doubtful, or is made to lead to contradictions or absurd results, the whole statute must be looked to, and the intent, as collected therefrom, *must prevail over the literal import of terms and detached clauses and phrases*." Storms v. Stevens, 3 N.E. 401, 403 (Ind. 1885) (emphasis added). Indiana courts have continued to follow this principle by stating that the courts will "not presume that the Legislature intended language used in a statute to be applied illogically or to bring about an unjust or absurd result." City of Carmel v. Steele, 865 N.E.2d 612, 618 (Ind. 2007). Such principles demonstrate that the literal meaning of a word in isolation is not controlling upon how the statute as a whole must be interpreted.

Our precedent also reflects the application of these principles. In State v. Bigbee, a statute regarding the types of bonds that may be accepted by a bail bondsman was challenged as unconstitutionally vague. 292 N.E.2d 609, 610 (Ind. 1973). While "total clarity of purpose [within a statute] is an important goal," "absolute precision is not a constitutional requirement as long as the statute *fairly indicates to a reasonable man*[] what actions are prohibited." Id. (citing Stotts v. State, 271 N.E.2d 722, 726 (Ind. 1971); and Roth, 354 U.S. at 491) (emphasis added). By reading in a reasonable person standard, this Court upheld the constitutionality of the statute. Bigbee, 292 N.E.2d at 610.

A reasonableness standard was also applied to the statute in Baldwin v. Reagan. 715 N.E.2d 332, 337 (Ind. 1999). In Baldwin, we held that reasonable suspicion is required for a police officer to stop an Indiana motorist for a suspected seatbelt violation. Id. We determined that "reasonable suspicion exists where the officer observes the driver or passenger under circumstances . . . that would cause *an ordinary prudent person* to believe that the driver or passenger is not wearing a seat belt as required by law." Id. (emphasis added).

In yet another case, the Court of Appeals applied a reasonableness analysis to the Indiana public intoxication statute, prior to its amendment. Wright v. State, 772 N.E.2d 449 (Ind. Ct.

App. 2002).  The constitutionality of the term "intoxication" was challenged as vague and overbroad.  Id. at 457.  The defendant argued that the statute did not differentiate between "legal" and "illegal" intoxication,[8] which would provide no guidance to police on when an arrest was appropriate.  Id.  The court disagreed, finding that the statute was not unconstitutionally vague, and explained:

> We are not persuaded by [the defendant's] attempts to produce an absurd result by arguing that a patron who has one sip of alcohol in a dining establishment would be guilty under the statute.  It is axiomatic that one sip, or even a few sips, of alcohol would not render an ordinary person "intoxicated" for purposes of the public intoxication statute.

Id. at 457-58.

These principles of interpretation provide the method in which this Court must approach its reading of the term "annoys."  There is little doubt that the subjective application of the term "annoys" would lead to absurd results and exceedingly broad discretion in enforcement. However, recognizing that statutes need not precisely state the prohibited conduct and should be read to avoid absurd results, principles of statutory interpretation instruct this Court to read a reasonableness standard into our public intoxication statute when analyzing the term "annoys." Furthermore, our precedent demonstrates the variety of instances in which Indiana statutes have been upheld as constitutional under the same analysis.

In each of the cases discussed above, the courts have read into statutes standards of reasonableness.  These statutes have continually been upheld based upon the understanding that a reasonable person standard provides enough notice of prohibited conduct and limitations upon discretionary enforcement to satisfy constitutional concerns.  We acknowledge Morgan's argument that "behavior that annoys some people will not annoy others. . . ."  (Appellant's Br. at 10) (relying on Coates v. Cincinnati, 402 U.S. 611, 614 (1971)) (stating that "[c]onduct that annoys some people does not annoy others").  However, Indiana has historically recognized that

---

[8] The statute at that time provided no definition of "intoxication."  However, the term "intoxicated" is now defined.  See Ind. Code § 9-13-2-86 (effective 2013).

the purpose of the public intoxication statute "is to protect the public from the *annoyance* and deleterious effects which may and do occur because of the presence of persons who are in an intoxicated condition," State v. Sevier, 20 N.E. 245, 246-47 (Ind. 1889) (emphasis added), thus demonstrating the apparent suitability of the word "annoys" within the statute. Indiana courts have also explicitly accepted that an objective reasonableness standard "is used in many areas of the law as an appropriate determinant of liability and thus a guide to conduct," and it also "provides a constraining and intelligible enforcement guideline for police and prosecutors." Price v. State, 622 N.E.2d 954, 967 (Ind. 1993).[9] Based upon the long-recognized purpose of this statute and our prior application of a reasonable person standard, we must conclude that the application of a reasonableness standard to the term "annoys" satisfies constitutional requirements.

Moreover, it seems highly likely that attempts to use other language to define the prohibited conduct would lead to the same vagueness issues that Morgan challenges. For example, annoy is defined as "to disturb or irritate especially by repeated acts"; or "to harass especially by quick brief attacks." Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/annoy (last visited December 18, 2014). We are unconvinced that replacing "annoy" with "disturb" or "irritate" would resolve the vagueness challenge asserted by Morgan. Disturbing or irritating conduct can also be highly subjective, unless an objective reasonableness standard is required as the baseline for determining the prohibited conduct. As such, a reasonableness standard is not only the prescribed method of interpreting the public intoxication statute, but the practical interpretation.

Under this reading, Morgan was provided sufficient notice of the type of conduct that is prohibited, and neither arbitrary nor discriminatory enforcement will be authorized or

---

[9] Although in Price, a reasonableness standard was explicitly provided in the statute, 622 N.E.2d at 967, in light of established principles of statutory construction and in accordance with precedent, the term "annoys" also merits the application of a reasonableness standard.

encouraged. Accordingly, we uphold the constitutionality of Indiana's public intoxication statute, Ind. Code § 7.1-5-1-3, by reading a reasonableness standard into "annoys."[10]

## II. Sufficiency of the Evidence

In upholding the constitutionality of Indiana's public intoxication statute, we must next address whether the State met its burden in providing sufficient evidence for Morgan to be convicted under this statute. In our collective judgment, there was insufficient evidence for Morgan to be convicted under Indiana Code § 7.1-5-1-3 (effective 2012). In viewing the evidence most favorable to the trial court's ruling, we will assume, as the evidence suggests, that Morgan was intoxicated by the use of alcohol during the relevant time period in a public place. However, since intoxication in public is no longer sufficient for a conviction, we must also evaluate whether Morgan was "annoy[ing] . . . another person."[11] Ind. Code § 7.1-5-1-3(a)(4). Furthermore, in light of our analysis above, Morgan's conduct must have risen to the level that would annoy the reasonable person.

The probative evidence relevant to Morgan's arrest for public intoxication consisted of: (1) Officer Garner observing Morgan sleeping at the bus shelter, (2) Morgan's initial refusal to leave the bus shelter upon Officer Garner's requests, (3) Morgan's agitated demeanor, and (4) Morgan swaying when he stood up to exit the shelter. Although Officer Garner noted that Morgan smelled of alcohol and had glassy bloodshot eyes, this evidence is probative of Morgan's intoxication and not whether he was annoying another person. See Brown v. State, 12 N.E.3d 952, 954 (Ind. Ct. App. 2014) (acknowledging that "glassy and bloodshot eyes"

---

[10] Although not an issue raised in this case, the same reasonableness standard would likely be applicable when interpreting the terms "harasses" and "alarms" that are also contained within the public intoxication statute.

[11] Morgan also raised the issue of whether "another person" should include police officers, because "the very nature of the profession, police officers are often annoyed in the situations they have to deal with." (Tr. at 16-17; Appellant's Br. at 12.) The plain language of the statute indicates that there is a violation if "another person" is annoyed. For the purposes of this analysis, "another person" can be a police officer.

evidenced signs of intoxication). Since intoxication has been presumed, only evidence probative to what conduct could have been annoying is relevant to our analysis.

In Brown, the Indiana Court of Appeals determined that there was sufficient evidence that the defendant had harassed, annoyed, or alarmed another person. 12 N.E.3d at 954-55.[12] In that case, the defendant exited a bar intoxicated, seemed unaware of his surroundings, walked directly into a woman on the street, and bumped into her with enough force that she immediately started yelling and drew the attention of a police officer nearby. Morgan's conduct is distinguishable from the defendant's in Brown.

First, Morgan was asleep at a bus shelter, not stumbling down a public sidewalk. Additionally, Morgan was sitting up in the bus shelter as he drifted in and out of sleep. He was not laying across the shelter bench or otherwise in a position that would obstruct the use of the bus shelter by others. A sleeping individual is unlikely to annoy a reasonable person. As this Court noted during oral arguments, an intoxicated person is more likely to be annoying if they are awake. Second, Officer Garner acknowledged that there were no other people at the bus shelter aside from Morgan, Morgan's brother, and himself. Unlike the defendant in Brown, who was walking down a crowded sidewalk and ran into someone, there were only two people even in the vicinity of Morgan.

Since Morgan's sleeping was unlikely to annoy a reasonable person, the basis of Officer Garner's annoyance rested upon Morgan's initial refusal to wake up and his agitated state.[13] Once again, a reasonable person would likely expect the conduct demonstrated by Morgan. When Officer Garner attempted to wake Morgan by tapping him on the shoulder, Morgan

[12] This Court's collective opinion was to deny transfer in Brown v. State, 12 N.E.3d 952 (Ind. Ct. App. 2014). As explained by the Court of Appeals, Brown's conduct was sufficient to harass, annoy, or alarm another person. Our analysis in this case would not change the outcome reached by the Court of Appeals in Brown.

[13] When ask during his testimony, "[c]an you please specifically state how [Morgan] was being annoying?" Officer Garner responded, "The behavior of Mr. Morgan by his tone and his refusal to – to leave the shelter, after numerous times of not only me, but the other gentleman to wake up. His tone of voice . . . he would not comply to my – to my order to leave the shelter. I considered that to be annoying." (Tr. at 21.)

responded, "Get off of me." (Tr. at 13.) If a person—intoxicated or not—is being awoken by a stranger, this response is not surprising, nor does it indicate a level of agitation that a reasonable person would see as annoying. This is especially true where Officer Garner did not indicate that Morgan was yelling or making unreasonable noise at this point, only that he appeared agitated. Albeit Morgan's state of agitation, he did, without much delay, comply with Officer Garner's request to wake up and exit the bus shelter.

These facts appear more akin to those in <u>Milam v. State</u>, 14 N.E.3d 879 (Ind. Ct. App. 2014). In that case, the police initiated a traffic stop of a vehicle and smelled alcohol. Two passengers in the vehicle, one being the defendant, admitted that they had consumed alcohol that night, and the officer proceeded to collect and run their identifications. The defendant was agitated by this and said, "this is bulls***" to the police officer and began arguing with the other passenger. <u>Id.</u> at 880. Although the defendant was speaking in a loud tone, there was no evidence that the defendant was annoying the other passenger or that his conduct was otherwise disturbing. The court held that "[p]rosecuting and convicting [the defendant] for being intoxicated, in a pulled-over car, while arguing with [another passenger or the police officer] does not reach the level of disturbing the peace, harassment, annoyance, or alarm and therefore does not meet the requirements of the public intoxication statute." <u>Id.</u> at 883.

As in <u>Milam</u>, Morgan was agitated after being approached by the police officer. However, the degree of agitation expressed in <u>Milam</u> and by Morgan, standing alone, does not rise to the level that would annoy a reasonable person. Therefore, the requirements for conviction under Indiana's public intoxication statute have not been met, and there is insufficient evidence to sustain Morgan's conviction.

### Conclusion

An objective reasonable person standard should be read into Indiana's public intoxication statute when applying the term "annoys." Under that reading, the statute is not unconstitutionally vague. Furthermore, in applying the reasonableness standard, there is insufficient evidence to sustain Morgan's conviction for public intoxication. We therefore vacate Morgan's conviction for Count II Class B misdemeanor public intoxication.

Rush, C.J., Dickson, Rucker, Massa, J.J., concur.