## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jul 15 2015, 5:23 am
CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| David M. Payne | Gregory F. Zoeller |
| Ryan & Payne | Attorney General of Indiana |
| Marion, Indiana | |
| | Richard C. Webster |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Daytwon Tyrone Black, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | July 15, 2015 <br><br> Court of Appeals Case No. <br> 27A04-1411-CR-514 <br><br> Appeal from the Grant Superior Court <br><br> The Honorable Warren Haas, Judge <br><br> Case No. 27D03-1408-CM-118 |

**Crone, Judge.**

## Case Summary

[1] Daytwon Tyrone Black appeals his conviction for class A misdemeanor theft. The dispositive issue presented for our review is whether the State presented

sufficient evidence to support his conviction. Finding the evidence sufficient, we affirm.

## Facts and Procedural History

In August of 2014, Jason Lines owned an orange and silver VIP moped, which he stored on his front porch on the 2900 block of South Nebraska Street in Marion. The moped had duct tape on the seat, a "Village Scooter" sticker on it, and a heart drawn with marker by the handle bars. There was a light switch under the dash in place of a key ignition, and the moped was equipped with a hard-shell luggage carrier. Lines went to bed one night at around 11:00 and noted that his moped was still parked on his porch. Lines's neighbor also observed the moped on Lines's porch that night at around midnight. Lines awoke at around 7:30 the following morning and discovered that his moped had been stolen from his porch.

At around the same time that morning, Detective Kent Wilson received an anonymous tip that Black was in the backyard of his residence working on a possibly stolen moped. Detective Wilson sent an officer to investigate. Officer Benjamin McKnight arrived at Black's house and noticed that he was in the backyard working on a moped. Officer McKnight informed Black why he was there. Black told Officer McKnight that an acquaintance had dropped off the moped for him to work on. Officer McKnight observed the moped and noted that it was orange and silver with blue painter's tape going up the side and covering the VIP logo. He further observed that a heart had been drawn near the handle bars and that the ignition key socket was removed and replaced by a

light switch. The seat was missing, but was later found alongside railroad tracks directly behind Black's home. The seat had duct tape on it. Officer McKnight ran the VIN number and learned that the moped had not been reported as stolen.

[4]     Detective Wilson arrived at Black's house and met with him and Officer McKnight in the backyard. Detective Wilson observed the orange and silver moped with parts stripped off of it. He noticed that the ignition was punched out and was replaced with a toggle switch, and that the seat and a hard-shell luggage carrier had been removed. The "Village Scooter" sticker had been removed and was lying on the ground, along with a luggage rack lock. Detective Wilson requested that Black go to the police department to be interviewed, and Black agreed. The moped was towed and impounded.

[5]     After the moped was towed, Officer McKnight received a tip that a moped had been stolen from the 2900 block of South Nebraska Street and that Black had been observed pushing a moped down an alley to his house. Officer McKnight drove to that block to conduct an investigation. Lines approached Officer McKnight and reported that his moped had been stolen. Lines described his moped as an orange and silver VIP that had a light switch to turn on the ignition, duct tape on the seat, and a heart design drawn near the handle bars. Officer McKnight notified Detective Wilson of Lines's report.

[6]     Meanwhile, Black gave a statement to Detective Wilson and claimed that a friend named Dustin Gannis had dropped off the moped at his house between

7:00 and 8:00 the previous night. Black could not provide any contact information for Dustin Gannis other than that he lived on 30th Street. Black explained that he did not have Gannis's phone number because Gannis would just stop by if he needed any work done. Approximately fifteen minutes into the interview, Detective Wilson was informed that the moped had been confirmed stolen. Detective Wilson made efforts to locate Dustin Gannis via social media, interdepartment databases, and neighborhood interviews, but had no success locating him or establishing that he even exists.

[7] The State charged Black with class A misdemeanor theft. Following a bench trial, the court found Black guilty as charged. This appeal ensued.

## Discussion and Decision

[8] To sustain a conviction for class A misdemeanor theft, the State was required to prove beyond a reasonable doubt that Black knowingly or intentionally exerted unauthorized control over Lines's moped, with the intent to deprive Lines of any part of its value or use. Ind. Code § 35-43-4-2. Black concedes that the State proved three elements beyond a reasonable doubt: (1) that he, Daytwon Black; (2) exerted unauthorized control; (3) over Lines's moped. The contested issues, which Black argues the State failed to prove beyond a reasonable doubt, are that he acted (1) knowingly or intentionally; and (2) with the intent to deprive Lines of any part of the moped's value or use.

[9] When reviewing the sufficiency of the evidence to support a conviction, we examine only the probative evidence and reasonable inferences that support the

verdict. *Morgan v. State*, 22 N.E.3d 570, 573 (Ind. 2014). We do not assess witness credibility or reweigh evidence. *Id*. Rather, we consider only the evidence most favorable to the verdict and will affirm the conviction unless no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *Id*. A conviction may be based solely on circumstantial evidence, which "need not overcome every reasonable hypothesis of innocence." *Moore v. State*, 652 N.E.2d 53, 55 (Ind. 1995).

[10] "A person engages in conduct knowingly if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b). "A person engages in conduct intentionally if, when he engages in the conduct, it is his conscious objective to do so." Ind. Code § 35-41-2-2(a). Intent is "'a mental function, and without a confession, it must be determined from a consideration of the conduct and the natural consequences of the conduct giving rise to the charge that the defendant committed theft.'" *Long v. State*, 867 N.E.2d 606, 614 (Ind. Ct. App. 2007). Therefore, "intent may be proven by circumstantial evidence," and it "may be inferred from a defendant's conduct and the natural and usual sequence to which such conduct logically and reasonably points." *Duren v. State,* 720 N.E.2d 1198, 1202 (Ind. Ct. App. 1999), *trans. denied* (2000).

[11] "While the mere unexplained possession of recently stolen property standing alone does not automatically support a conviction for theft, such possession is to be considered along with the other evidence in a case" regarding the "circumstances of the possession." *Holloway v. State*, 983 N.E.2d 1175, 1179 (Ind. Ct. App. 2013). "The fact of possession and all the surrounding evidence

about the possession must be assessed to determine whether any rational trier of fact could find the defendant guilty beyond a reasonable doubt." *Id.* Both Lines and his neighbor confirmed that the moped was parked on Lines's porch as late as 11:00 p.m. to midnight. An anonymous tip revealed that Black was pushing the moped down an alley toward his house that night, and he was disassembling the moped in his backyard hours later. Black alleged that a man named Dustin Gannis brought the moped to his house between 7:00 and 8:00 that evening, but police, after much effort, were unable to confirm that this man even exists. Black had no phone number, address, or any other contact information for this man other than that he lived somewhere on 30th Street. It was reasonable for the trier of fact to infer from this evidence that Black lied when he explained how and when he came into possession of the moped. Black's argument to the contrary is merely an invitation to reweigh evidence and judge witness credibility, which we may not do. Thus, the trier of fact could reasonably determine from these circumstances that Black knowingly or intentionally exerted unauthorized control over Lines's property.

[12] The same evidence that proves that Black acted knowingly or intentionally also supports the conclusion that he acted with the intent to deprive Lines of the use or value of the moped. The evidence would support the conclusion that Black took Lines's moped from Lines's porch sometime in the middle of the night, without Lines's permission, and transported it to his backyard where he began disassembling it. Parts were scattered around the yard, and the seat was discarded along nearby railroad tracks. Breaking down or otherwise altering a

vehicle makes it more difficult to trace and identify. Thus, the trier of fact could reasonably determine that Black intended to deprive Lines of the use or value of his moped. Consequently, we affirm Black's conviction.

[13]     Affirmed.


Brown, J., and Pyle, J., concur.